**SKYDANCER MUSIC, LLC**

      **Plaintiff,**

      **v.**

**JEFFERY WAYNE BATES, individually, and
JEFFERY WAYNE BATES D/B/A SKYDANCER
ENTERTAINMENT, LLC and SKYDANCER
ENTERTAINMENT, LLC and JEFFERY
WAYNE BATES  D/B/A JEFF BATES
ENTERTAINMENT, LLC and JEFF BATES
ENTERTAINMENT, LLC,**

      **Defendants.**

Civil Action No. _____

## COMPLAINT

Plaintiff Skydancer Music, LLC, by and through undersigned counsel, files this Complaint against Defendants Jeffery Wayne Bates, individually, Jeffery Wayne Bates d/b/a Skydancer Entertainment, LLC, Skydancer Entertainment, LLC, Jeffrey Wayne Bates d/b/a Jeff Bates Entertainment, LLC, and Jeff Bates Entertainment, LLC, and alleges as follows:

### INTRODUCTION

1.    This is an action based on the Copyright Act of the United States, Title 17 of the United States Code, as well as an Independent Contractor Agreement, a Digital Phonorecord Delivery License ("DPD License"), and a Custom Mechanical License ("Mechanical License"), all of which were entered into by Skydancer Music, LLC and Jeff Bates d/b/a Skydancer Entertainment, LLC.

## PARTIES

2.      Skydancer Music, LLC ("Skydancer") is a music publishing company. It was formed and registered with the Tennessee Secretary of State on or around September 14, 2012. It is an active limited liability company in the State of Tennessee. The sole member of Skydancer is Michael Thompson ("Mr. Thompson"), a resident of Alabama.

3.      Skydancer Entertainment, LLC ("SE") was a limited liability company formed and registered with the Tennessee Secretary of State on or around July 19, 2012. SE was administratively dissolved on or around August 13, 2013. SE remained administratively dissolved through the date of execution of all relevant licenses and, therefore, it did not have the status or protection of a limited liability company. Rather, upon information and belief, Jeffery Wayne Bates operated SE as a sole proprietorship or under a "doing business as" title. SE was not reinstated with the Tennessee Secretary of State until April 16, 2015.

4.      Jeffery Wayne Bates, professionally known as Jeff Bates, ("Bates") is a country music recording artist and songwriter. Bates is a resident of Tennessee and frequently did business under the name Skydancer Entertainment, LLC, which did not have the status or protection of a limited liability company between the dates of August 13, 2013 and April 16, 2015.

5.      Jeff Bates Entertainment, LLC ("JBE") is not an entity that is registered with the Tennessee Secretary of State. Jeff Bates Entertainment, LLC is the company identified on checks sent to Skydancer. Upon information and belief, Jeffrey Wayne Bates operates JBE as a sole proprietorship or under a "doing business as" title.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction, pursuant to 28 U.S.C. § 1331, over the subject matter of this copyright infringement action because it arises under the United States Copyright Act, 17 U.S.C.

§§ 101, *et seq.*

7.      This Court has jurisdiction, pursuant to 28 U.S.C. § 1367, over the subject matter of the declaratory judgment and breach of contract claims contained herein because they form part of the same case or controversy as the copyright infringement claims.

8.      This Court has personal jurisdiction over Bates and SE by virtue of the fact that Bates and SE are both residents of Tennessee. Furthermore, a substantial part of the events or omissions giving rise to the claim occurred in Tennessee.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Bates and SE are subject to personal jurisdiction in this judicial district and because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL BACKGROUND

### Independent Contractor Agreement

10.     On or around November 1, 2012, Skydancer entered into an Independent Contractor Agreement (the "Agreement") with Bates. This Agreement is attached hereto as **Exhibit A**.

11.     The Agreement provided that Bates would provide songwriter services to Skydancer in exchange for a draw of $6,250.00 per month (the "Draw).

12.     The Agreement also served as a written transfer of Bates' pro rata share of copyright in all musical works (or "songs") written or composed by Bates from January 1, 2012 through the end of the Agreement were the sole property of Skydancer. This transfer included songs were written prior to the date the Agreement was executed.

13.     Included in the transfer of copyrights to Skydancer was Bates' ownership of Bates' pro-rata share of a song/musical work titled "Me and Conway," which was completed sometime in 2012.

14.     Skydancer filed a registration of copyright ownership with the U.S. Copyright office for the song "Me and Conway" with an effective registration date of September 25, 2013. This Registration is attached hereto as **Exhibit B**.

15.     Pursuant to the Agreement, Skydancer would retain one hundred percent (100%) of the publisher's royalty share for the life of copyright in the songs. In addition, Skydancer would retain one hundred percent (100%) of the songwriter's royalty share until the Draw had been fully repaid and satisfied. After such repayment and satisfaction (hereinafter referred to as "repayment"), the songwriter royalty share would be paid to Bates.

16.     Bates was contractually required to perform live at all Skydancer events. In exchange for each live performance, Bates' account would be credited $1,000.00 toward repayment of the Draw.

17.     Bates also agreed to serve Skydancer well, faithfully and competently and to devote his full efforts to the Agreement.

18.     On or around March 15, 2013, Skydancer notified Bates of its intent to terminate the Agreement for cause, based on Bates' breach of the Agreement. Skydancer paid Bates a Draw each month through April 30, 2013, after which time the Agreement was terminated for cause and Skydancer paid no additional Draws to Bates.

19.     As of the date of filing this Complaint, Bates' account with Skydancer has a remaining unpaid balance in the amount of approximately $33,741.66.

20.     Under the terms of the Agreement, Skydancer is entitled to file a lawsuit against Bates in which it seeks to recover damages resulting from Bates' breach of the Agreement. *See* **Exhibit A, Paragraph 14.**

21.     The unpaid balance of $33,741.66 could have been recouped, at least in part, if Bates

had not breached the Agreement. Thus, Skydancer has suffered damages stemming from Bates' breach.

## DPD License

22.     On or around August 28, 2014, Skydancer granted SE or Bates d/b/a SE a Digital Phonorecord Delivery License (the "DPD License"). A copy of the DPD License is attached hereto as **Exhibit C.** The DPD License granted SE the right to record the song "Me and Conway" (also referred to as the "Composition," the "Song," or the "Musical Work") on Bates' solo album, which was also titled "Me and Conway."

23.     The DPD License specifically granted a nonexclusive license for the manufacture and distribution of digital phonorecord deliveries ("DPDs") as defined in 17 U.S.C. § 115. SE further agreed to comply with the applicable provisions of the Copyright Act of the United States, 17 U.S. C. § 101 *et. seq.*, unless otherwise modified in the DPD license.

24.     The DPD License was limited to the manufacture and distribution of DPDs and the making of a copy of a sound recording of the Composition on a computer file server solely for the purpose of distributing such DPDs.

25.     The DPD License required SE to pay Skydancer the statutory royalty rate for each DPD embodying the Composition made and distributed by SE or made and distributed under his authority.

26.     SE was required, under the terms of the License, to render to Skydancer a statement of all royalties earned during each calendar quarter and to remit therewith payment in the full amount shown to be due to Skydancer within forty-five (45) days following the end of such calendar quarter.

27.     The DPD License provided that if SE failed to account and pay royalties to Skydancer,

and further failed to remedy such default within thirty (30) days after written notice was given, then the DPD License and all rights granted by the License shall *automatically terminate.*

28.     Upon such termination, "the making or distribution of phonorecords (whether DPD or not) for which the royalty has not been paid" would become actionable as acts of infringement under the United States Copyright Act. **Exhibit C, Paragraph 8.**

29.     The DPD License expressly states that should SE fail to comply with the obligations as set forth in 17 U.S. C. § 101 *et. seq.*, except as expressly modified by the DPD License, or violate the terms of the DPD License or deviate from the scope of the rights set out therein in any manner, Skydancer shall have all rights and remedies provided to the proprietor of a copyright against unauthorized use as set forth in 17 U.S.C. § 101, *et. seq. See* **Exhibit C, Paragraph 9.**

30.     The DPD License also provided that in the event legal action becomes necessary for Skydancer to collect royalties, SE or Bates d/b/a SE would bear all costs of collection and litigation expended by Skydancer, including all legal costs and reasonable attorney fees.

**Mechanical License**

31.     On or around August 27, 2014, Skydancer granted SE or Bates d/b/a SE a Mechanical License, which gave SE the right to reproduce the Composition on Bates' solo album, "Me and Conway." A copy of the Mechanical License is attached hereto as **Exhibit D.** The Mechanical License specifically granted SE a nonexclusive license for the manufacture and distribution of the Composition in compact disc format.

32.     SE paid Skydancer an advance for the initial manufacture of 50,000 compact disc units.

33.     The Mechanical License states that it is a variance of the terms of the compulsory license provision of the Copyright Act. *See* 17 U.S.C. § 115. As a result, the Mechanical License must be read supplementary to 17 U.S.C. § 115 and interpreted in conjunction with the compulsory

license provisions of the Copyright Act set forth therein.

34. The Mechanical License is silent as to when statements of royalties are to be made and when royalties are to be paid.

35. 17 U.S.C. § 115(c)(5) of the Copyright Act provides that royalty payments are to be made on or before the twentieth day of each month and shall include all royalties for the preceding month.

36. The statute further provides that "Monthly payments are to be made under oath and are to comply with the requirements that the Register of Copyrights shall prescribe by regulation." 17 U.S.C. § 115(c)(5).

37. The Mechanical License provided that if SE failed to account and pay royalties as provided and failed to remedy such default within thirty (30) days after written notice given by Skydancer, then the License and all such rights granted therein would *automatically terminate.*

38. Upon such termination, the making or distribution of phonorecords for which the royalty has not been paid would become actionable as acts of infringement under the United States Copyright Act.

39. In the event the Mechanical License terminated, Skydancer would be entitled to assert all rights and remedies provided to the proprietor of a copyright against unauthorized use as set forth in 17 U.S.C. § 101, *et. seq.*

### Distribution of the album "Me and Conway"

40. On or around October 10, 2014, the album "Me and Conway" was released to the public in multiple formats including DPD format and compact disc format.

41. Upon information and belief, the album "Me and Conway," which contained the song "Me and Conway," was released in additional formats for which Skydancer had not issued a license, including, but not limited to, interactive digital streaming, non-interactive digital

streaming, audio format on YouTube, and video format on YouTube.

42.     Upon information and belief, the album "Me and Conway" was released and distributed by Bates individually or by Bates d/b/a Skydancer Entertainment, LLC, Skydancer Entertainment, LLC, Bates d/b/a/ Jeff Bates Entertainment, LLC or Jeff Bates Entertainment, LLC.

### Accountings, Royalty Payments, and Request to Cure

43.     With regard to the DPD License, SE or Bates d/b/a SE failed to properly account and render quarterly payments to Skydancer pursuant to the terms of the License.

44.     The first royalty accounting and payment under the DPD License was due on or before forty-five days following December 31, 2014.

45.     With regard to the Mechanical License, SE failed to properly render monthly statements of to Skydancer in accordance with the statutory compulsory license and the requirements of the Register of Copyrights. *See* 17 U.S.C. § 115.

46.     The first monthly statement of account under the Mechanical License was due on or before the twentieth of November, 2014 for the preceding month.

47.     On or around December 5, 2013, Skydancer, through Counsel, notified Bates of his obligation to provide a royalty accounting. No accounting was provided.

48.     On or around January 12, 2014, Skydancer notified Bates directly of his obligation to account by sending a text message to that effect. No accounting was provided.

49.     On or around April 6, 2015 Skydancer, through counsel, provided Bates and SE with notice that Bates had failed to properly and timely provide the required royalty accountings and payments for the DPD and Mechanical Licenses. This written notice stated, "Please let this letter

serve as notice that you must remedy such default within thirty days of this written notice or such default may be actionable as an act of copyright infringement."

50.     On May 1, 2015, Skydancer's counsel sent an email to Bates and SE's counsel outlining the specific information that needed to be provided in the royalty accounting. This email is attached hereto as **Exhibit E.** Specifically, Skydancer's counsel requested: accountings of all product distributed via Bates' distributor, Sony Red, accountings of all product distributed by Mr. Bates at his live performances and through his website, and license requests for any and all unlicensed uses of "Me and Conway."

51.     Bates requested an extension to the cure period. Skydancer granted an extension through May 15, 2014.

52.     On May 14, 2015, a royalty accounting was delivered to Skydancer's counsel. The royalty accounting in regard to the Mechanical License, however, contained critical errors and omissions. Specifically, it listed only business to business sales and failed to account for "artist sales," i.e. sales by Bates directly to his fans at live shows and through his website.

53.     The May 14, 2015 royalty accounting indicated that there were digital uses of the song "Me & Conway" that exceeded the scope of the DPD license.

54.     On May 27, 2015, Skydancer's counsel notified Bates and SE's counsel that the inaccurate summary report combined with the lack of a report for first quarter physical sales resulted in a failure to cure in a timely manner. In an untimely effort to remedy the situation Bates and SE, through counsel, sent an email on or around May 30, 2015 to Skydancer's counsel which attempted, but failed, to correct the errors and omissions from the original royalty accounting.

## Termination of Licenses

55.    On June 4, 2015, Skydancer's counsel sent an email to Mr. Bates' counsel notifying

Bates that, as a result of his failure to timely and accurately remedy the default, the licenses (both

the DPD License and the Mechanical License) had automatically terminated and were no longer

valid. A copy of this email is attached hereto as **Exhibit F.** This email also stated that any further

sales or exploitation of the song "Me and Conway" were being done without a valid license and

such actions constituted copyright infringement.

56.    Thus, as of June 4, 2015, *any* use by Bates d/b/a SE of the song "Me and Conway" was

an unlicensed use and a violation of the United States Copyright Act.

## Unlicensed Uses of "Conway and Me" on the Opry

57.    On or around December 26, 2014, Bates was a guest performer at the Grand Ole Opry in

Nashville, TN (the "Opry").

58.    During the Opry performance, Bates performed "Me and Conway."

59.    This performance was recorded (in audio format), broadcasted, and distributed via a

multitude of outlets including, broadcast radio and the internet through opry.com.

60.    At no time has Bates, his agents, SE, the Opry, or any of the Opry's distributors contacted

Skydancer to request a license to make the recording of Bates' performance of "Me and

Conway" in audio format in accordance with 17 U.S.C. § 106. Nor has Bates, the Opry, or any of

the Opry's distributors contacted Skydancer to request a license to distribute or rebroadcast the

audio via Opry.com. *See* 17 U.S.C. § 106.

61.    Upon information and belief, Bates either consented to the making and distribution of

these recordings or purported to grant the Opry a license to record and distribute "Me and

Conway" in audio format.

62.     Bates was not an owner of "Me and Conway" and, therefore, he had no authority to consent or grant any license on behalf of Skydancer.

63.     Skydancer has not asked for a take-down of these unlicensed uses, but it has specifically requested, in its May 1, 2015 email, that Bates and SE request licenses from Skydancer for all unlicensed uses of "Me and Conway." *See* **Exhibit E.**

64.     In violation of the United States Copyright Act, no license requests for these unlicensed Opry uses have been made.

65.     Bates' copyright infringement was willful.

66.     Skydancer acknowledges that BMI has a right to license public performance rights on behalf of Skydancer and that BMI has granted a public performance license to the Opry, however, such license does not extend any rights to record or distribute the song "Me and Conway" in audio format.

### Unlicensed Digital Audio Uses of "Me and Conway"

67.     The May 14, 2015 royalty accounting, along with internet searches, made it apparent that there were digital audio uses of the song "Me and Conway" that exceeded the scope of the DPD License, such as YouTube audio, limited downloads, interactive streaming, and non-interactive streaming.

68.     At no time has Bates, SE, or any of his agents contacted Skydancer to request a license to distribute audio content via Youtube, limited downloads, or via any interactive or non-interactive streaming service. *See* 37 C.F.R. 385.13 *et all*.

69.     Neither the DPD License nor Mechanical License granted Bates and SE a right to distribute "Me and Conway" as a limited download or via interactive streaming or non-interactive streaming.

70.     The DPD License stated that if Bates and SE failed to cure, the DPD License would automatically terminate and render the making or distribution of recordings in DPD format or any other format for which the royalty has not been paid, actionable as acts of infringement under the United States Copyright Law. *See* **Exhibit C, Section 8.**

71.     Skydancer has not consented to any general license agreements with YouTube or any other entity in relation to limited downloads, interactive streaming, or non-interactive streaming.

72.     Upon information and belief, Bates either consented to the distribution of "Me and Conway" for limited downloads or via interactive and non-interactive websites and/or applications or purported to grant licenses to these interactive and non-interactive websites and/or applications including youtube.com.

73.     Bates was not an owner of "Me and Conway" and, therefore, he had no authority to consent or grant such digital audio use licenses on behalf of Skydancer.

74.     Skydancer has not asked for a take-down of these unlicensed digital audio uses, but it has specifically requested, in its May 1, 2015 email, that Bates and SE request licenses from Skydancer for all unlicensed uses of "Me and Conway." *See* **Exhibit E.**

75.     In violation of the United States Copyright Act, no license requests for these unlicensed digital audio uses have been made.

76.     Bates' copyright infringement was willful.

77.     Skydancer acknowledges that BMI has a right to license public performance rights on behalf of Skydancer and that BMI has granted a public performance license to the YouTube, however, such license does not extend any rights to record or distribute the song "Me and Conway" in audio or audiovisual format.

## Unlicensed Video Uses of "Me and Conway"

78.     An internet search reveals that there are unlicensed audiovisual/video synchronization uses of the song "Me and Conway" on youtube.com.

79.     Upon information and belief, Bates, either himself or through his agents, has recorded in audiovisual format a multitude of Bates' live performances of "Me and Conway" and has posted those videos on youtube.com

80.     At no time has Bates, his agents, SE, or any other entity owned or controlled by Bates contacted Skydancer to request a video synchronization license or any other license to make these video recordings of Bates' performances of "Me and Conway" in audiovisual format.

81.     At no time has Bates, his agents, SE, or any other entity owned or controlled by Bates contacted Skydancer to request a license to distribute the video of "Me and Conway" via youtube.com.

82.     Skydancer has not entered into any consent agreements or other license agreements with YouTube or any other entity in relation to video uses on youtube.com.

83.     Upon information and belief, Bates either consented to the making and distribution of these audiovisual recordings or purported to grant a license to synchronize, record and distribute "Me and Conway" in audiovisual format.

84.     Bates was not an owner of "Me and Conway" and, therefore, had no authority to consent or grant such video synchronization license on behalf of Skydancer.

85.     Skydancer has not asked for a take-down of any of the unlicensed audiovisual uses, but in an email dated May 1, 2015, Skydancer's Counsel specifically requested that Bates and SE request licenses from Skydancer for all unlicensed uses of "Me and Conway."

86.     These unlicensed uses of the video constitute a violation of the United States Copyright

Act.

87.     Bates' copyright infringement was willful.

88.     Skydancer acknowledges that BMI has a right to license public performance rights on behalf of Skydancer and that BMI has granted a public performance license to YouTube, however, such license does not extend any rights to record or distribute the song "Me and Conway" in audiovisual format.

<u>**Unlicensed Public Performances of "Me and Conway"**</u>

89.     Bates has publicly performed "Me and Conway" at venues throughout the United States. Upon information and belief, one or more of these venues were not licensed by the performing rights organization, BMI, that holds the right to license Skydancer's catalog for public performance.

90.     Neither Bates nor any of the unlicensed venues have contacted Skydancer to request a public performance license for "Me and Conway."

91.     Upon information and belief, Bates either consented to the public performance of "Me and Conway" or purported to license such public performance of "Me and Conway."

92.     Bates was not an owner of "Me and Conway" and, therefore, had no authority to consent or grant such license on behalf of Skydancer.

93.     Skydancer has not asked Bates to stop performing "Me and Conway," but in its May 1, 2015 email it specifically requested that Bates request licenses from Skydancer for all unlicensed uses of "Me and Conway." *See* **Exhibit E.**

94.     In violation of the United States Copyright Act, no license requests for Bates' unlicensed public performances have been made.

95.     Bates' copyright infringement was willful.

## Piercing the Corporate Veil

96.     Upon information and belief, Bates has failed to maintain necessary corporate formalities in relation to SE and any other entities owned or controlled by Bates.

97.     Upon information and belief, Bates has used SE and JBE as his alter ego.

98.     Upon information and belief, Bates has commingled funds between Bates individually, SE, and JBE.

99.     Upon information and belief, SE and/or JBE is undercapitalized.

## COUNT I
### (Breach of Contract—Independent Contractor Agreement)

100.    The allegations contained in Paragraphs 1-99 of the Complaint are incorporated herein by reference.

101.    A valid contract existed between Skydancer and Bates.

102.    Skydancer terminated Bates for cause after Bates breached the terms of the Agreement.

103.    Bates' breach has caused Skydancer $33,741.66 in damages.

104.    Bates is liable to Skydancer for these damages under the terms of the Agreement. *See* **Exhibit A, Paragraph 14.**

105.    Bates is also liable to Skydancer for attorney fees and legal costs associated with this lawsuit under the terms of the Agreement. *See* **Exhibit A, Paragraph 16.**

## COUNT II
### (Breach of Contract—Digital Phonorecord Delivery License)

106.    The allegations contained in Paragraphs 1-105 of the Complaint are incorporated herein by reference.

107.    SE or Bates d/b/a SE breached the terms of the DPD License and failed to timely cure that breach, as set forth more fully above.

108.     Skydancer has suffered damages from SE's breach of this license, in an amount to be determined at trial.

109.     Skydancer requests an accounting to determine the amount of unpaid royalties due to it.

110.     Skydancer requests repayment of advances due to it.

111.     Pursuant to Paragraph 8 of the DPD License, Skydancer is entitled to legal costs and attorney fees for the costs incurred by Skydancer in this litigation. *See* **Exhibit C, Paragraph 8.**

## COUNT III
### (Breach of Contract—Mechanical License)

112.     The allegations contained in Paragraphs 1-111 of the Complaint are incorporated herein by reference.

113.     SE or Bates d/b/a SE breached the terms of the Mechanical License and failed to timely cure that breach, as set forth more fully above.

114.     Skydancer has suffered damages from SE's breach of this license, in an amount to be determined at trial.

115.     Skydancer requests an accounting to determine the amount of unpaid royalties due to it.

## COUNT IV
### (Declaratory Judgment—Digital Phonorecord Delivery License)

116.     The allegations contained in Paragraphs 1-115 of the Complaint are incorporated herein by reference.

117.     There exists an actual controversy regarding whether the DPD License is in effect.

118.     Skydancer seeks a declaratory judgment that the DPD License is no longer in effect due to the fact that it automatically terminated when SE breached its terms and failed to timely cure the breach.

## COUNT V
### (Declaratory Judgment—Mechanical License)

119.    The allegations contained in Paragraphs 1-118 of the Complaint are incorporated herein by reference.

120.    There exists an actual controversy regarding whether the Mechanical License is in effect.

121.    Skydancer seeks a declaratory judgment that the Mechanical License is no longer in effect due to the fact that SE breached the terms of the Mechanical License and failed to timely cure the breach.

## COUNT VI
### (Copyright Infringement—Production and Distribution of Digital Phonorecords)

122.    The allegations contained in Paragraphs 1-121 are incorporated herein by reference.

123.    Skydancer owns Bates' pro rata share of the copyright in the song/musical work "Me and Conway".

124.    Skydancer timely registered the copyright in "Me and Conway" with the U.S. Copyright Office prior to the infringement of "Me and Conway."

125.    Skydancer registered the copyright in "Me and Conway" within five (5) years of the initial publication of "Me and Conway."

126.    Bates did not obtain a compulsory statutory license as required under 17 U.S.C. §115, nor did SE, JBE, or any entity owned or controlled by Bates, or any individual acting on behalf of Bates.

127.    Upon termination of the negotiated DPD license, any production and distribution of Digital Phonorecords of the song "Me and Conway" was done without Skydancer's consent or a compulsory license and, therefore, constituted copyright infringement under 17 U.S.C. § 115.

128.    Bates' copyright infringement or that of SE, JBE or any other entity owned or controlled by Bates, was willful.

129.    Pursuant to 17 U.S.C. § 115 and 17 U.S.C. § 504, Bates is liable to Skydancer for statutory damages for any production and distribution of Digital Phonorecords of the song "Me and Conway."

130.    Skydancer is also entitled to additional remedies as set out in 17 U.S.C. §§ 502, 503, 505.

### COUNT VII
### (Copyright Infringement—Production and Distribution of Compact Discs)

131.    The allegations contained in Paragraphs 1-130 are incorporated herein by reference.

132.    Skydancer owns Bates' pro rata share of the copyright in the song/musical work "Me and Conway".

133.    Skydancer timely registered the copyright in "Me and Conway" with the U.S. Copyright Office prior to the infringement of "Me and Conway."

134.    Skydancer registered the copyright in "Me and Conway" within five (5) years of the initial publication of "Me and Conway."

135.    Bates did not obtain a compulsory statutory license as required under 17 U.S.C. §115, nor did SE, JBE, or any entity owned or controlled by Bates, or any individual acting on behalf of Bates.

136.    Upon termination of the negotiated Mechanical license, any production and distribution of compact discs containing the song "Me and Conway" was done without Skydancer's consent or a compulsory license and, therefore, constituted copyright infringement under 17 U.S.C. § 115.

137.    Bates' copyright infringement or that of SE, JBE or any other entity owned or controlled by Bates, was willful.

138.    Pursuant to 17 U.S.C. § 115 and 17 U.S.C. § 504, Bates or SE is liable to Skydancer for statutory damages for any production and distribution of compact discs containing the song "Me

and Conway."

139.    Skydancer is also entitled to additional remedies as set out in 17 U.S.C. §§ 502, 503, 505.

### COUNT VIII
### (Copyright Infringement—Unlicensed Recording at the Grand 'Ole Opry)

140.    The allegations contained in Paragraphs 1-139 are incorporated herein by reference.

141.    Skydancer owns Bates' pro rata share of the copyright in the song/musical work "Me and Conway".

142.    Skydancer timely registered the copyright in "Me and Conway" with the U.S. Copyright Office prior to the infringement of "Me and Conway."

143.    Skydancer registered the copyright in "Me and Conway" within five (5) years of the initial publication of "Me and Conway."

144.    Upon information and belief, Bates consented to, or purported to grant a license for, the Grand 'Ole Opry's recording of his live performance of "Me and Conway."

145.    Bates had no authority to consent to or grant a license in such a recording because he is not the owner of the song "Me and Conway."

146.    The unauthorized recording violated Skydancer's exclusive rights, as set out in 17 U.S.C. § 106(1), and, therefore, constitutes copyright infringement.

147.    Bates' copyright infringement was willful.

148.    Skydancer is entitled to remedies under 17 U.S.C. § 502, 503, 504, 505.

### COUNT IX
### (Copyright Infringement—Unlicensed Sync Uses)

149.    The allegations contained in Paragraphs 1-148 are incorporated herein by reference.

150.    Skydancer owns Bates' pro rata share of the copyright in song/musical work "Me and Conway".

151.    Skydancer timely registered the copyright in "Me and Conway" with the U.S. Copyright Office prior to the infringement of "Me and Conway."

152.    Skydancer registered the copyright in "Me and Conway" within five (5) years of the initial publication of "Me and Conway."

153.    Upon information and belief, Bates, either himself or through his agents, has recorded in audiovisual format a multitude of live performances of "Me and Conway" and has posted those videos on YouTube.

154.    Bates, or his agents, has infringed on Skydancer's exclusive rights as set out in 17 U.S.C. § 106(1) by making unauthorized recordings of the musical work "Me and Conway" and by causing "Me and Conway" to be distributed and publically performed via youtube.com.

155.    Bates' copyright infringement was willful.

156.    Skydancer is entitled to remedies under 17 U.S.C. § 502, 503, 504, 505.

### COUNT X
### (Copyright Infringement—Unlicensed Streaming)

157.    The allegations contained in Paragraphs 1-156 are incorporated herein by reference.

158.    Skydancer owns Bates' pro rata share of the copyright in the song/musical work "Me and Conway" and has timely registered this copyright.

159.    Upon information and belief, Bates consented to, or purported to grant a license allowing for, the streaming of the musical work "Me and Conway" via several streaming services.

160.    This unauthorized streaming constitutes an infringement on Skydancer's exclusive rights as set out in 17 U.S.C. § 106(1).

161.    Bates' copyright infringement was willful.

162.    Skydancer is entitled to remedies under 17 U.S.C. § 502, 503, 504, 505.

## COUNT XI
### (Copyright Infringement—Unlicensed Public Performances)

163.    The allegations contained in Paragraphs 1-162 are incorporated herein by reference.

164.    Skydancer owns Bates' pro rata share of the copyright in the song/musical work "Me and Conway" and has timely registered this copyright.

165.    Upon information and belief, Bates has performed at venues that were not licensed by the performing rights organization, BMI, that holds the license to Skydancer's catalog.

166.    These unlicensed performances infringed on Skydancer's exclusive right to publically perform the musical work "Me and Conway" in violation of 17 U.S.C. §106(4).

167.    Bates' copyright infringement was willful.

168.    Skydancer is entitled to remedies under 17 U.S.C. § 502, 503, 504, 505.

## COUNT XI
### (Failure to Maintain Corporate Formalities)

169.    The allegations contained in Paragraphs 1-168 are incorporated herein by reference.

170.    Upon information and belief, Bates has failed to maintain necessary corporate formalities in relation to SE and any other entities owned or controlled by Bates.

171.    Upon information and belief, Bates has used SE and JBE as his alter ego.

172.    Upon information and belief, Bates has commingled funds between Bates individually, SE and JBE.

173.    Upon information and belief SE was a mere instrumentality of Bates.

174.    Upon information and belief Bates exercised control over SE in such a way as to harm the Plaintiff.

175.    Upon information and belief, a refusal to disregard the corporate entity would subject the Plaintiff to unjust loss.

# PRAYER FOR RELIEF

WHEREFORE, Defendant prays for relief against Defendants as follows:

(a)     For a declaration that the DPD License is no longer valid because it automatically terminated when Bates breached the terms of this License;

(b)     For a declaration that the Mechanical License is no longer valid because it automatically terminated when Bates breached the terms of this License;

(c)     For a declaration that the corporate veil of SE should be pierced and Bates be held personally liable hereunder.

(d)     For a judgment in the amount of $33,741.66 to satisfy the damages Skydancer has suffered due to Bates' breach of the Independent Contractor Agreement;

(e)     For an Order enjoining Bates pursuant to 17 U.S.C. § 502 from exploiting the song "Conway and Me" in any manner that would constitute copyright infringement under 17 U.S.C. §101, *et seq*;

(f)     For an Order impounding, pursuant to 17 U.S.C. § 504, all phonorecords found to have been made or used in violation of the copyright owner's exclusive rights, and of all masters, tapes, film negatives, or other articles by means of which such phonorecords may be reproduced;

(g)     For an Order requiring Bates to pay Skydancer statutory damages in the amount of $150,000 per statutory infringement, as provided for under 17 U.S.C. § 504, or, alternatively, in the amount deemed to be appropriate by this Court; and

(h)     For an Order requiring Bates, or his agents, to secure a license for "Me and Conway" for any reproduction or public performance of the song "Me and Conway," whether it be at the Opry, on YouTube, on streaming sites or applications, or any other unlicensed use.

Respectfully submitted,

*/s/ Stephanie Taylor*
Stephanie Taylor (Sup. Ct. No. 028243)
Ashley N. Goins (Sup. Ct. No. 034253)
STITES & HARBISON, PLLC
401 Commerce Street, Suite 800
Nashville, TN 37219-2376
T: (615) 782-2200
F: (615) 742-0731
Email: staylor@stites.com
        agoins@stites.com
*Counsel for Plaintiff, Skydancer Music, LLC*